ARTHUR RUSSELL (AR 0506)
Attorney at Law
14 Wall Street, 22nd Floor
New York, NY 10005-2101
Telephone: (212) 732-7800
Facsimile: (973) 661-4646
e-mail: arthur@attorneyrussell.com

ROBERT TED PARKER (RP 5369)
(*pro hac vice pending*)
Attorney at Law
7 Mira Loma Road
Orinda, California 94563
Telephone: (415) 412-1615
Facsimile: (925) 254-8011
Email: tedparkerlaw@gmail.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| BARBARA J. FRIED and B. MARK FRIED; ALTITUDE PARTNERS, LLC; RICHARD D. MALTZMAN, AS TRUSTEE FOR THE RICHARD D. & CHARLENE MALTZMAN FAMILY TRUST U/A/D 3/23/88; JEFFOREED PARTNERS, L.P.; JEFFOREED MANAGEMENT COMPANY, INC.; and ZELFAM, LLC, on behalf of limited partners listed on **Annex A** to the Complaint**.** | |
| Plaintiffs, | Civil Case No.: 09-9100 |
| - vs - | **MEMORANDUM OF LAW SUPPORTING MOTION TO APPROVE LEAD PLAINTIFFS AND SELECTION OF LEAD COUNSEL** |
| LEHMAN BROTHERS REAL ESTATE ASSOCIATES III, L.P.; LEHMAN BROTHERS PRIVATE EQUITY ADVISERS, LLC; REAL ESTATE PRIVATE EQUITY, INC.; MARK A. WALSH; MARK H. NEWMAN; BRETT BOSSUNG; MICHAEL J. ODRICH; CHRISTOPHER M. O'MEARA; RICHARD S. FULD, JR.; JOSEPH M. GREGORY; ERIN CALLAN; IAN LOWITT; THOMAS RUSSO; AND DOES 1 through 50, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................1

   I. FACTUAL BACKGROUND ........................................................................2

      A. "Opt-In" Nature of This Class Action. ...........................................3

      B. Nature of the PPM Representations. ...............................................4

      C. Nature of the Falsity. ........................................................................4

      D. Nature of Defendants' Involvement. ...............................................5

      E. Basis for Class Claims and Relief Sought. .....................................6

   II. THE AD HOC COMMITTEE SHOULD BE APPOINTED LEAD
      PLAINTIFFS.................................................................................................6

      A. The PSLRA Standards for Appointing Lead Plaintiff ..............6

      B. The Ad Hoc Satisfies The Provisions Of The PSLRA And

         Should Be Appointed Lead Plaintiffs.............................................7

         1. The Ad Hoc Committee Has Satisfied The PSLRA
            Procedural Requirement.............................................................7

         2. The Ad Hoc Committee Possesses the Largest Financial
            Interest in the Relief Sought......................................................8

      3. The Ad Hoc Committee Satisfies Rule 23's Typicality
         and Adequacy Requirements ....................................................... 9

        (a)   The Ad Hoc Committee's Claims Are Typical Of The
            Claims Of The Class ................................................................. 9

        (b)   The Ad Hoc Committee Will Fairly and Adequately
            Represent the Interests of the Class ............................. 10

   III.   THE COURT SHOULD APPROVE THE AD HOC COMMITTEE'S
        CHOICE OF COUNSEL ......................................................................... 12

CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992)..................................................................................................... 9

*In re eSpeed, Inc. Sec. Litig*.
   232 F.R.D. 95 (S.D.N.Y. 2005) .................................................................................................. 9

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D. N.Y. 1998) ........................................................................................... 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D. N. Y. 1995) ............................................................................................ 10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust  v.
   LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................................. 11

**Statutes**

Private Securities Litigation Reform Act of 1995
15 U.S.C. §78u-4(a)(3)(A) and (B)................................................................................................ 8
15 U.S.C. §78u-4(a)(3)(A)(i)(II).................................................................................................... 6
15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................................ 8
15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).............................................................................................. 9
15 U.S.C. §78u-4(a)(3)) – (i) ......................................................................................................... 1

Securities Exchange Act of 1934
§21D.......................................................................................................................................... 7, 12
§21D(a)(3)(A)(i) ............................................................................................................................ 6

Delaware anti-Fraud statute,
   6 Del.C. §7303 ........................................................................................................................... 6

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730...................... 11

## INTRODUCTION

Plaintiffs BARBARA J. FRIED and B. MARK FRIED; ALTITUDE PARTNERS, LLC; RICHARD D. MALTZMAN, AS TRUSTEE FOR THE RICHARD D. & CHARLENE MALTZMAN FAMILY TRUST U/A/D 3/23/88; JEFFOREED PARTNERS, L.P.; JEFFOREED MANAGEMENT COMPANY, INC.; and ZELFAM, LLC, (THE "AD HOC COMMITTEE") respectfully submit this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order appointing its representatives Barbara Fried, Alex Dembitzer, Richard Maltzman and Daniel Zelman as the Lead Plaintiffs, and approving its choice of counsel as Lead Counsel for the Class.[1]

This motion proposes the four members of the LP Group's Ad Hoc Committee as Class Representatives that satisfy the requirements to raise the presumption of being the "most adequate plaintiffs" and satisfying the primary goals of Congress in enacting the PSLRA (15 U.S.C. §78u-4(a)(3)) – (i) they have filed the Complaint herein, (ii) they include two of the largest-amount individual investors in the subject Limited Partnerships, and (iii) they include the two investors who initially took action to protest the Defendants' actions, and (iv) they satisfy all other requirements of Rule 23.

---

1   The first steps in a securities class action are consolidation of related actions, appointment of a lead plaintiff and approval of the lead plaintiff's selection of lead counsel. Consolidation is appropriate pursuant to Fed. R. Civ. P. Rule 42(a):

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The Ad Hoc Committee is not aware of any related cases, and does not move for consolidation.

Plaintiff representatives Barbara J. Fried and Alex Dembitzer have each separately committed to invest $5,000,000 in real estate limited partnerships included within the 11 Lehman limited partnerships that comprise LBREP III, as alleged in the Complaint. As a result of their respective $5,000,000 investment commitments in LBREP III, Movants believe that the Ad Hoc Committee includes two members who have suffered the largest losses of anyone within the 60+ member investor group who have elected to join the Class. Further, Plaintiff representatives Daniel Zelman and Richard Maltzman were the initial leaders of the Limited Partner Group ("LP Group") who organized the 60+ (and growing) member group of Class members by notifying all LBREP III limited partner investors and soliciting interest in joining the effort to obtain relief. Movants are familiar with the applicable provisions governing the appointment of the lead plaintiffs in securities class actions, understand its responsibilities to the Class, and are willing and able to oversee the prosecution of this action.

Movants therefore include two members who have the largest per capita financial interest in the relief sought by the class, and they are not subject to any unique defenses that would render them incapable of adequately representing the class. Movants will ensure that the litigation is conducted in the best interests of the members of the class. Therefore, Movants respectfully request that the Court grant their motion to be appointed Lead Plaintiffs, and approve its selection of Lead Counsel.

## I.   *FACTUAL BACKGROUND*

Movants filed the Complaint for the LP Group, then over 50 investors (listed on Annex A to Complaint) who collectively committed to invest at least $52,750,000 as limited partners of the partnerships within LBREP III. The LP Group members each signed an Agency and Conflicts Waiver Agreement ("Agency Agreement") in which the members agreed to contribute

to a Legal Fund to finance the effort to secure relief, to appoint the Ad Hoc Committee to act for the LP Group, and to select counsel for the LP Group. *Complaint, Annex B.* The chief complaint of the LP Group concerned Defendants' misrepresentations and failures to disclose their scheme to use Plaintiffs' invested funds to acquire real estate from Lehman at prices far above fair value, without adequate disclosure in Private Placement Memoranda (PPMs), and without obtaining investors' informed consent to these transactions among related parties within the Lehman family of companies.

### A.     "Opt-In" Nature of This Class Action.

This case differs from many class actions, as the Complaint is brought on behalf of identified persons *who have elected to join* the Class, mostly prior to the filing of the Complaint. Each Class member has already contributed to the Legal Fund and appointed the Ad Hoc Committee to lead the prosecution of the LP Group's claims. It is not the typical class action brought on behalf of an unknown number of persons who are unaware of the filing and need to be notified of the action via the news media, etc. Rather, this large plaintiff group (now 60+ members) has chosen to utilize the procedural efficiencies of Rule 23, and whose claims fulfill the requirements of Rule 23. Since each Class member elected to join the group effort, the Class is already defined and the choice of Class Representatives and counsel is also established. By signing the Agency and Conflict Waiver Agreement, each of the Class members has (i) agreed to immediately pay to the Legal Fund one percent (1%) of their initial Capital Commitment, and (ii) appointed Movants as their agents, coupled with an interest, to manage the Legal Fund, hire counsel and prosecute litigation, and to support the conduct of the litigation proceedings, and implement the decisions of the LP Group.

### B. Nature of the PPM Representations.

This case arises from a fraudulent scheme perpetrated within the Lehman Brothers' affiliated companies during the months shortly preceding Lehman's bankruptcy. None of the Defendants are involved in the Lehman bankruptcy, however. The PPMs for the limited partnerships were issued to prospective investors by October, 2007, during the broad market decline. They uniformly spoke of future market opportunities, and stated that Lehman's experts would, at a later date, identify and evaluate the "*investments to be made by LBREP III,*" and would "*monitor changing economic conditions, anticipate the impact on real estate markets and act quickly and decisively on compelling investment opportunities.*" The PPMs stated that the "General Partner will create an Investor Advisory Committee" that is "unaffiliated with the General Partner and the LPAs said the "General Partner shall endeavor in good faith to appoint members . . . who, as a group, are representative of the Limited Partners." The PPMs and LPAs both stated that the IAC would objectively review transactions in which the General Partner had conflicts of interest, and would also be consulted concerning any write-down of property valuations.

### C. Nature of the Falsity.

But, as Defendants well knew, these PPM forward-looking statements were misleading, since the Defendant Lehman affiliates had long before, near the market's top, already made the acquisitions of properties that they intended to later transfer to the Partnerships, in self-dealing transactions at prices that would instantly evaporate 30% of Plaintiffs' capital without their knowledge or consent. The PPMs were silent about the nature of such transfers. The LPAs stated that Lehman-owned properties "may be transferred" to Partnerships at "acquisition cost plus cost of carry" *provided that* investor consent were obtained, but did not suggest that

investors would thereby inherit a loss from properties Lehman acquired well before the Partnerships were even formed. Further, no independent committee would be formed to weigh the unfairness to investors from self-interested transactions at excessive valuations of properties transferred in a falling market.

        D.    **Nature of Defendants' Involvement.**

The misrepresentations and omissions in the PPMs were "group-published information," resulting from the efforts of all Defendants in drafting, reviewing and publishing the PPM contents for promulgation to investors such as Plaintiffs. The Complaint alleges that (i) Defendants Fuld, Gregory, Walsh and Odrich formulated the overall plan for Lehman to "warehouse" real estate investments for subsequent transfer to the Partnerships and outlined to subordinate Lehman officials how the PPMs should describe what was to be done with investors' money; (ii) Defendants O'Meara, Callan and Lowitt compiled the financial information regarding Lehman's property investments, the market information regarding the overall market decline, the loss positions represented by most of the real property investments to be transferred to the Partnerships, and then largely disregarded GAAP principles for write-downs of investment valuation, supported the effort to conceal that investors would inherit Lehman's losses upon their initial investment, (iii) Defendants Walsh, Bossung and Newman made the actual approvals and purchases of Lehman properties to be "warehoused," and intimately knew of the overall market decline, the loss positions represented by most investments to be transferred, and thereafter directly marketed limited partnership interests to investors with the PPMs which they helped write to conceal that investors would inherit Lehman's losses, and further concealed by deciding to omit 2nd Quarter 2008 financial statement to investors and thereby continued to hide the losses; and (iv) Defendant Russo headed the legal team that helped write the PPMs and LPAs

and passed on their legal sufficiency of those documents, and failed to disclose that investors could inherit Lehman's losses upon their initial investment, and supported the further concealment by disregarding the LPA-required 2nd Quarter 2008 financial statements.

### E. Basis for Class Claims and Relief Sought.

The Complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, violation of the Delaware anti-Fraud statute, 6 Del.C. §7303, and common law fraud, negligent misrepresentation and breach of fiduciary duty under the laws of New York State. The Complaint seeks relief in the form of rescission under Section 29(b) of the Securities Exchange Act of 1934, or damages in the alternative, plus disgorgement of management fees paid to the General Partner, certain injunctive relief, recovery of costs and attorneys' fees and punitive damages.

## II. THE AD HOC COMMITTEE SHOULD BE APPOINTED LEAD PLAINTIFFS

### A. The PSLRA Standards for Appointing Lead Plaintiff

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiffs to oversee class actions brought under the federal securities laws. Specifically, §21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice informing class members of the action and their right to file a motion for the appointment of lead plaintiff.

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as

Lead Plaintiff in response to any such notice by not later than 90 days after the date of publication pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this section the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members that the Court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**B.   The Ad Hoc Satisfies The Provisions Of The PSLRA And Should Be Appointed Lead Plaintiffs**

### 1.   The Ad Hoc Committee Has Satisfied The PSLRA Procedural Requirement

A notice pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") was sent as a Press Release for publication on November 20, 2009 to the Wall Street Journal and www.wsj.com, a widely circulated national business-oriented publication and wire service,. A Revised Press Release was sent to the Wall Street Journal on December 7, 2009. *Declaration of Robert Ted Parker ("Parker Decl."), Ex. A.* In addition, each Class member received <u>actual notice by email from the Ad Hoc Committee</u> on December 7, 2007 which attached a copy of the

Revised Press Release sent for publication to the Wall Street Journal. *Parker Decl., Ex. B.* These notices again informed the actual class members of the pendency of the action and their right to move to be appointed lead plaintiff and to designate, within 60 days, their choice of lead counsel other than the Ad Hoc Committee that each had appointed in the Agency Agreement. Complaint, Annex B. Accordingly, pursuant to the PSLRA all motions for lead plaintiff must be filed no later than December 30, 2009. The time period during which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on December 30, 2009. Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Two members of the Ad Hoc Committee (Friedman, Maltzman) duly signed and filed forms of verification stating that they had reviewed the Complaint in this action, and that facts alleged therein are true to their knowledge. *Parker Decl., Exs. C.* In addition, both Barbara Fried and Alex Dembitzer have signed copies of the Agency Agreement, which specifically names each of them (Messrs. Maltzman and Zelman also) as members of the Ad Hoc Committee which is charged with the leadership of the LP Group's efforts to recover their damages, which obligations they accepted thereby. *Complaint, Annex B*

### 2. The Ad Hoc Committee Possesses the Largest Financial Interest in the Relief Sought

Further, Annex A to the Complaint shows that Ad Hoc Committee members Barbara J. Fried (with her husband B. Mark Fried) and Alex Dembitzer (member of Altitude Partners LLC) have each invested $5,000,000 into LBREP III limited partnerships, and that Ms. Fried and Mr. Dembitzer have the largest investments among the members of the LP Group comprising the Class. *Complaint, Annex A.* Thus, the Ad Hoc Committee are presumptively the most adequate

plaintiffs pursuant to the PSLRA.  See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Ad Hoc Committee Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class.  At this stage, the Ad Hoc Committee "need only make a preliminary showing that it satisfy the typicality and adequacy requirements of Rule 23."  *In re eSpeed, Inc. Sec. Litig*. 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (quoting *In re Olsten Corp. Sec. Litig*., 3 F. Supp. 2d 286 (E.D. N.Y. 1998).

Moreover, the PSLRA provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that the individuals or the group "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 12 U.S. C. 78u-4(a)(3)(B)(iii)(II).

As detailed below, Movants satisfy the typicality and adequacy requirements of Rule 23(a).

#### (a) The Ad Hoc Committee's Claims Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has: (a) suffered the same injuries as the absent class members; (b) as a result of the same course of conduct by defendants; (c) and its claims are based on the same legal issues.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Typicality arises when a

proposed lead plaintiff's claims arise from the same conduct from which other plaintiffs' claims and injuries arise. Possible factual distinctions between plaintiffs' claims do not vitiate typicality, as the same legal theory may control even in the face of differences in fact. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 2008 (S.D. N. Y. 1995) ("The typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical' The possibility of factual distinctions between claims of the named plaintiff and those of the other class members does not destroy typicality, as similarity of legal theory may control even in the fact of differences of fact." *Id.* (internal citations omitted). The questions of law and fact here, which predominate over questions that may affect individual claims, include:

   i.    whether Defendants' acts and/or omissions as alleged herein violated the federal securities laws;

   ii.   whether the Defendants' representations to plaintiffs and the other Class members misrepresented and/or omitted material facts;

   iii.  whether Defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting material facts;

   iv.   whether Defendants' conduct alleged herein was intentional, reckless, or grossly negligent or in violation of fiduciary duties owed plaintiff and other class members and therefore violated the statutory and common law of New York;

   v.    whether Class members are entitled to rescission of their investments, or to what extent the members of the Class have sustained damages and the proper measure of damages.

The typicality requirement is satisfied here because the claims asserted by Movants Ad Hoc Committee are based on the same legal theory and arise from the same event or practice or course of conduct that gives rise to the claims of the class members.

   **(b)    The Ad Hoc Committee Will Fairly and Adequately Represent the Interests of the Class**

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect

the interests of the class." In order to satisfy the adequacy requirement of Rule 23(a), there should not be a conflict between the interests of the class and the named plaintiff, nor should there be collusion among the litigants; and the plaintiff's attorney must be qualified and experienced. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).

The interests of the Ad Hoc Committee are clearly aligned with the members of the proposed Class. There is no evidence of any potential conflict between the Ad Hoc Committee and the Class members. Indeed, any potential conflict has been expressly waived in the Agency Agreement. *Complaint, Annex B.* As detailed above, the Ad Hoc Committee shares substantially similar questions of law and fact with the members of the proposed Class, their claims are typical of the members of the Class, differing only in amounts invested, and the Ad hoc Committee has taken significant steps to advance this litigation. In addition, the members of the Ad hoc Committee have demonstrated their adequacy to serve as class representatives by signing an Agency Agreement appointing them to serve as, and assuming the responsibilities of, Class representative. Finally, the Ad Hoc Committee have retained counsel experienced in litigating securities class actions such as this to represent them. *Complaint, Annex B;*

In addition to satisfying the requirements of Rule 23, members of the Ad Hoc Committee are precisely the type of large, sophisticated investors - the prototypical lead plaintiffs – envisioned by the framers of the PSLRA. As noted by Congress in the Statement of Managers, the PSLRA was enacted, in part, because "other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733.


The Ad Hoc Committee is comprised of sophisticated investors with resources sufficient to adequately litigate this action and supervise class counsel. For these reasons, the Ad Hoc Committee of Barbara J. Fried, Alex Dembitzer, Daniel Zelman and Richard D. Maltzman should be appointed Lead Plaintiffs in this action.

### III.   THE COURT SHOULD APPROVE THE AD HOC COMMITTEE'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. See §21D(a)(3)(B)(v). The Ad Hoc Committee has chosen Robert Ted Parker, Esq., formerly a partner of K&L Gates, LLP to serve as Lead Counsel. Mr. Parker has extensive experience in the area of securities litigation and has successfully litigated numerous securities fraud class actions on behalf of injured investors, including in the U.S. District Court for the Southern District of New York. *Parker Decl.¶ 3.*

### CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court appoint the Ad Hoc Committee, comprised of Barbara J. Fried, Alex Dembitzer, Daniel Zelman and Richard D. Maltzman as Lead Plaintiffs in this action, and approve Lead Plaintiff's choice of Mr. Parker as Lead Counsel.

DATED: December 29, 2009

                                                   /s/Arthur Russell
                                                ARTHUR RUSSELL (AR 0506)
                                                Attorney at Law
                                                14 Wall Street, 22nd Floor
                                                New York, NY 10005-2101
                                                Telephone: (212) 732-7800
                                                e-mail: arthur@attorneyrussell.com

                                                *Counsel for the Ad Hoc Committee and*
                                                *Proposed Lead Counsel for the Class*